IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

FILED

JUL 0 7 2014

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

**ROBERT FRY,**

    **Petitioner-Defendant,**

v.

Civil Action No. 3:13-cv-19
Criminal Action No. 3:09-cr-78
(Bailey)

**UNITED STATES OF AMERICA,**

    **Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION/OPINION

### I. INTRODUCTION

On February 22, 2013, Robert Fry ("Petitioner"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civil Action No. 3:13-cv-19, Docket No. 1; Criminal Action No. 3:09-cr-78, Docket No. 83.) That same day, the Clerk of Court mailed Petitioner a Notice of Deficient Pleading, which informed him that he had twenty-one (21) days to correct his Motion by filing it on the correct form as per Local Rule of Prisoner Litigation Procedure 3.4. (Docket No. 89.)[1] Petitioner filed his correct form ("Court-Approved Motion") on March 15, 2013. (Docket No. 92.) On May 2, 2013, the undersigned entered an Order directing the Government to respond to Petitioner's motion. (Docket No. 94.) The Government filed its response on May 2, 2013. (Docket No. 98.) Subsequently, on August 21, 2013, Petitioner filed a response to Respondent's motion. (Docket No. 104.)

The undersigned now issues this Report and Recommendation on Petitioner's motion without

---

[1]From this point, all docket numbers refer to entries in Criminal Action No. 3:09-cr-78 unless otherwise noted.

holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss Petitioner's motion.

## II. FACTS

### A. *Conviction and Sentence*

On November 17, 2009, Petitioner was named in a six-count Indictment returned by a Grand Jury sitting in the Northern District of West Virginia. (Docket No. 1.) Count One charged that on June 7, 2007, Petitioner and co-defendant Ashley Nicole Staubs aided and abetted each other to distribute approximately 0.71 gram of "crack" cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. Count Three charged that on the same day, Petitioner and Staubs aided and abetted each other to distribute approximately 0.24 gram of "crack" cocaine.

On May 24, 2010, Petitioner appeared before retired United States Magistrate Judge David J. Joel to enter a guilty plea to Count One of the Indictment pursuant to a written plea agreement that he had signed on May 19, 2010. Petitioner waived his right to prosecution and consented to proceed before a United States Magistrate Judge. (Docket No. 46) In his written plea agreement, Petitioner waived his right to appeal and collaterally attack his sentence. Specifically, Petitioner's plea agreement contained the following language concerning his waiver:

> Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions made by the United States in this plea agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. **The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus).** The United States does not waive its right to appeal the sentence; however, in the event

>   that there would be an appeal by the United States, Defendant's waiver contained in
>   this paragraph will be voided provided defendant complies with the provisions of
>   Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

(Docket No. 47 at 4 (emphasis added).)

On July 10, 2010, the United States Probation Office disclosed its Presentence Investigation Report ("PSR"). (Docket No. 67.) Based upon the amount of "crack" cocaine involved in Count One and Count Three, the USPO calculated a base offense level of 12. (Id. at 6-7.) However, the USPO found that Petitioner had at least two prior felony convictions of either a crime of violence or a controlled substance offense, namely: (1) a 1988 conviction for possession with intent to distribute Phencyclidine, commonly known as "PCP," in Prince George's County, Maryland; and (2) a 2001 conviction for first degree burglary in Anne Arundel County, Maryland. (Id. at 7.) Accordingly, the USPO determined that Petitioner was a career offender within the meaning of U.S.S.G. § 4B1.1. (Id.) As a result, the USPO concluded that the offense level was 32 rather than 12. (Id.) The USPO then reduced the offense level two levels for acceptance of responsibility and one level for timely acceptance of responsibility, for a total offense level of 29. (Id.) With a total offense level of 29 and a career offender criminal history category of VI, the USPO calculated a Guidelines range of 151 to 188 months. (Id. at 36.) Neither counsel for the United States nor counsel for Petitioner filed any written objections to the PSR.

On January 23, 2011, however, counsel for Petitioner filed a Sentencing Memorandum (Docket No. 64.) wherein he discussed Petitioner's 2001 first degree burglary conviction at length. As an initial matter, counsel for Petitioner described the offense:

>   On April 18, 2002, the Defendant was convicted for First Degree Burglary in the
>   Circuit Court of Anne Arundel County, Maryland, at age 43. The burglary occurred
>   in the daytime when the occupants were at work. Entry was gained by prying open

a side door. No one was harmed in the offense and the home owner discovered the
burglary upon his return form work in the evening.

(Id. at 9.) Referencing U.S.S.G. § 4B1.2(a)(2), counsel for Petitioner recognized the manner in which the Guidelines treat burglary for purposes of career offender status:

This offense . . . serves as a predicate for career offender status as the Guidelines classify burglary as a crime of violence despite whether it is designated as such under State law.

(Id.) Counsel for Petitioner then outlined Maryland substantive criminal law (which he also attached), arguing that a burglary is not *per se* a crime of violence. (Id. at 9-10.) Nevertheless, counsel for Petitioner grudgingly recognized the application of U.S.S.G. § 4B1.1, he does so by a very narrow margin." (Id. at 10.) Accordingly, counsel for Petitioner asked the Court to vary below the lower end sentence of 151 months:

[T]he Defendant asks the Court to apply the guideline found at level 24 with a criminal history category of VI which simply doubles the guideline range where the Defendant's sentence would have fallen if he wasn't a career offender (level 12 times 2) for a range of 100 - 125 months, and pursuant to the parties' agreement, sentence him to the lower end of that applicable range, ie., 100 months.

(Id. at 12.)

On January 25, 2011, Petitioner appeared before Chief United States District Judge John Preston Bailey for his sentencing hearing. Neither counsel stated an objection to the PSR, nor did either counsel object to the Court's tentative Guidelines findings, which mirrored the PSR. (Docket No. 76 at 4-6.) During his statement on behalf of Petitioner, counsel for Petitioner again addressed the career offender issue and again asked the Court to vary downward and sentence Petitioner to 100 months. (Id. at 13.) After hearing argument from counsel for the United States, however, the Court sentenced Petitioner to a term of imprisonment of 151 months, well within the statutory maximum

4

of 20 years. (Id. at 16.)

B.  *Direct Appeal*

Petitioner, by counsel Byron Manford, Esq., filed a Notice of Intent to Appeal on February 2, 2011. (Docket No. 70.) On June 3, 2011, the United States moved the Fourth Circuit to dismiss Petitioner's appeal as barred by the knowing and voluntary appellate waiver in his written plea agreement. (App. Doc. 22.) On July 28, 2011, the Fourth Circuit granted the United States' motion, reasoning in relevant part:

> Upon review of the plea agreement and the transcript of the Fed. R. Crim. P. 11 hearing, we conclude that Fry knowingly and voluntarily waived his right to appeal his sentence and that the issues Fry seeks to raise on appeal fall squarely within the compass of his waiver of appellate rights.

(App. Doc. 19 at 1.) The Fourth Circuit issued its mandate on August 19, 2011. (App. Doc. 33.)

On October 26, 2011, counsel for Petitioner petitioned the Supreme Court of the United States for a writ of certiorari and the case was docketed on January 12, 2012. (App. Doc. 37.) On February 21, 2012, the Supreme Court denied the petition, exhausting the direct appeal of Petitioner's sentence (App. Doc. 38.).

C.  *Federal Habeas Corpus*

   1.  **Petitioner's Motion**

   In his Court-Approved Motion, Petitioner raises the following claims:

1.  The Court committed error by abusing its discretion and using a Maryland conviction as a predicate conviction to enhance my sentence.

2.  Co-Defendant Kenny Riley meets the career offender requirements, yet received only 112 months at his sentencing. I did not receive due process.

3.  My attorney provided in-effective [sic] counseling. He was given ample time from the Court to prepare an objection to the governments [sic] use of prior

5

convictions but failed to do so.

(Docket No. 92 at 5-8.)

2. **Government's Response**

In opposition to Petitioner's motion, the Government asserts the following:

1. Ground One and Ground Two are barred by Petitioner's § 2255 Waiver.

2. Ground Three is Factually and Legally Unsupported.

(Docket No. 99 at 10-12.)

3. **Petitioner's Reply**

In his reply, Petitioner expands upon the claims raised in his motion. Petitioner further makes a claim under U.S. Supreme Court decision Alleyne v. United States, 133 S.Ct. 2151 (2013).

(Docket No. 104.)

## III. ANALYSIS

A. *Applicable Law Regarding Petitioner's Waiver*

1. **Law Governing Waivers of Direct Appeal and Collateral Attack Rights**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality." Id. The Fourth Circuit has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreement." United States v. Lemaster,

403 F.3d 216, 220 (4th Cir. 2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial." United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994)(citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. Id. at 732. Furthermore, the Attar court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. Id.

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." Id. at 220. The Lemaster court did not address whether the same exceptions that were noted by the Attar court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. Id. at 220 n.2; see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral

7

attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." Braxton v. United States, F. Supp. 2d 497, 502 (W.D.Va. 2005).[2] However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights. Cannady, 283 F.3d at 645 n.3 (collecting cases). Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver." Braxton, 358 F. Supp. 2d at 503.

### 2. Law Governing Whether a Waiver is Knowing and Intelligent

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" Attar, 38 F.3d at 731 (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002).

In the plea agreement, the Petitioner agreed to waive his right to appeal and collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255

---

[2]The Fourth Circuit issued an unpublished per curiam opinion affirming the Western District of Virginia's ruling in Braxton. See United States v. Braxton, 214 F. App'x 271 (4th Cir. 2007) (per curiam).

8

(habeas corpus). During Petitioner's plea hearing, the following colloquy occured:

> The Court: And do you understand under the terms of the plea agreement, you are giving up the majority of your rights to appeal any sentence imposed upon you by the Court, as well as the right to file – you are giving up the right to file habeas corpus petitions attacking the legal validity of the guilty plea and the sentence. Do you understand?
>
> The Defendant: Yes, sir.
>
> The Court: Mr. Manford, do you believe that Mr. Fry fully understands the importance of the waiver of his appellate rights?
>
> Mr. Manford: I do, Your Honor.

(Docket No. 77 at 12:8-19.) Petitioner also confirmed his understanding that the written plea agreement contained the full agreement between himself and the Government. (Id. at 13:3-6.) The undersigned finds that Petitioner knowingly and intelligently entered into and waived his right to collateral attack by entering into the plea agreement. Therefore, the undersigned finds that Counts One and Two of Petitioner's motion should be dismissed.

### B. *Petitioner's Ineffective Assistance of Counsel Claims*

#### 1. Standard Governing Claims of Ineffective Assistance of Counsel

The Petitioner alleges that he was provided ineffective counsel because his attorney was given ample time from the Court to prepare an objection to the government's use of prior convictions but failed to do so. The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the

"performance" and "prejudice" prongs. Fields v. Att'y Gen. Of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. At 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

Two days before Petitioner's sentencing, counsel for the Petitioner filed a Sentencing Memorandum with the Court and asked the Court to vary below the lower end of the 151 month

sentence on the basis that one of the prior convictions was not a *per se* crime of violence. Again during sentencing, counsel for the Petitioner asked the Court to vary downward in sentencing and sentence Petitioner to 100 months. Therefore, the undersigned finds that Petitioner's argument that his counsel failed to object to the government's use of prior convictions is without merit.

C.    *Petitioner's Claim for Relief Under Alleyne*

Petitioner makes a claim under Alleyne v. United States, 133 S. Ct. 2151 (2013). However, Alleyne is not applicable and does not afford relief in this case. Under the so-called "savings clause" of § 2255, a remedy under § 2255 is only inadequate and ineffective when (1) at the time of conviction, settled law of the Fourth Circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law. Rice v. Rivera, 617 F.3d 802, 807 (4th Cir. 2010); see also 8 U.S.C. § 2255(e).

Here, Petitioner has not shown that § 2255 is inadequate and ineffective under the savings clause because Alleyne did not represent a change in substantive law such that the conduct of which Petitioner was convicted is deemed not to be criminal. Moreover, every court to have addressed the issue has held that Alleyne is not retroactive on collateral review. Accord Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013); United States v. Potter, No. 703-21-DCR, No. 7:13-7290-DCR, 2013 WL 3967960, at *3 (E.D.Ky. July 31, 2013) (concluding that "the rule announced in Alleyne does not qualify as a watershed rule of criminal procedure" and nothing that "[a] number of other district courts considering the matter have reached a similar conclusion").

In Alleyne, the Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" of the criminal offense that must be proven beyond a reasonable doubt by submission to the jury. The Court resolved Alleyne on direct, rather than collateral review, and it did not declare that its new rule applied retroactively on collateral attack. Indeed, Alleyne is an extension of Apprendi v. New Jersey, 530 U.S. 466 (2000). The Supreme Court has decided that other rules based on Apprendi do not apply retroactively on collateral review, and the Supreme Court has not held that Alleyne is retroactive on collateral review. See Schriro v. Summerlin, 542 U.S. 348 (2004). Therefore, Petitioner is not entitled to relief under Alleyne.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 3:13-cv-19, Docket No. 1; Criminal Action No. 3:09-cr-78, Docket No. 83) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and

Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Robert Fry.

DATED: July 7, 2014

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE